JOHNSON, Judge.
Plaintiff brought suit against Frank Stip-elcovich to be adjudged the owner of a certain motor vessel in defendant’s possession, for damages resulting from the latter’s illegal detention of said vessel and for attorney’s fees. Alternatively if defendant be declared the legal owner of the vessel, plaintiff sued for refund of payments made on the purchase price and for various sums he expended and for which he was obligated in connection with the construction of the vessel and the purchase of •equipment.
In plaintiff’s second supplemental petition the defendant was named individually and in Article 22, for the first time, it says: “ * * * and doing business as Frank Stipelcovich & Co. * * The answer and several exceptions by defendant are in -defendant’s individual name only. No where is the name Frank Stipelcovich & ■Co. otherwise defined. The name has crept into the pleadings and judgment, without it having been formally impleaded as an additional party defendant, and we will continue to use it.
Defendants have taken this appeal from a judgment of the District Court declaring them to be the registered and legal owners of the vessel and awarding plaintiff the sum of $7,063.63 under his alternative demand.
In the District Court an exception was filed to plaintiff’s petition alleging it contained inconsistent causes of action. The trial judge properly overruled this exception. Demands to be declared the owner of the vessel and for damages for illegal seizure are not inconsistent. The alternative plea for expended funds was legally before the court. Bullis v. Town of Jackson, La.App., 4 So.2d 550.
Both plaintiff and defendants are engaged in the shrimp industry, plaintiff as the operator of a shrimp boat, and defendants as purchasers of the catch from shrimp boats.
The case on the merits revolves around an oral agreement between the parties relative to the construction and operation of a certain forty-eight (48) foot motor vessel, the “Cherie”. Plaintiff alleges that in the original negotiation between him and defendants, the vessel was to be constructed by plaintiff’s brother, a boat builder, and it was to be registered in plaintiff’s name as owner, and defendants would have a mortgage on the boat for money they advanced to plaintiff for its construction. Plaintiff’s position is that the ultimate agreement was to register the vessel in the name of defendants as a security device until one-half the construction price of $22,-000.00 advanced by and due to defendants was paid by plaintiff, at which time registration was to be transferred to plaintiff, and that under this arrangement plaintiff had possession of the boat and used it to catch shrimp. The latter’s repayments of the construction money advanced by defendants were to be made by defendants receiving 25% of the catch from each trip of the vessel, the value of this 25% of the catch to be accepted by defendants as credits against plaintiff’s debt. Plaintiff alleges and contends further that the vessel was so operated by him until December 9, 1954, when defendants, with two Plaquemines Parish Deputy Sheriffs, seized the boat *314 without any judicial process. One of the deputy sheriffs and plaintiff took an inventory of the effects on the vessel a few days later. Plaintiff claims he bought and paid for the equipment. Defendants deny that in the answer, but offer no evidence to disprove it.
The answer of defendants denies every allegation of plaintiff’s petition but makes no allegation of special defense. The testimony on behalf of defendants is not altogether clear. Our appraisal of it is that the defendants contend that the “Cherie” was constructed for them; that after its completion instead of selling it to plaintiff and taking a mortgage, they retained ownership and registered the vessel in their name; that the agreement was that defendants were to transfer the vessel to plaintiff when their 25% share of the catch from each trip amounted to the total sum of money they had advanced to plaintiff for the boat’s construction; that this was their usual method of operation, their profit arising from the sale of all the shrimp catch after paying plaintiff for his 75% of the catch; that the vessel was not to be transferred to plaintiff when the former’s share of the catch amounted to only one-half the construction cost of the vessel, and that it was only after plaintiff failed to deliver his catch or any part of it to defendants that defendants took possession of the boat and later sold it. Further, defendants state that plaintiff is in debt to them for other moneys advanced and for bills paid, both relating to operating expenses of the vessel while in plaintiff’s possession.
The facts reflected in the record preponderate in favor of defendants as the true owners of the motor vessel. The master carpenter’s certificate (builder’s certificate) filed with the Treasury Department, Bureau of Customs, signed by plaintiff’s brother as the builder of the boat, states that the vessel was constructed for Frank Stipelcovich. Plaintiff said that previously he had insured boats in his name, but did not state that the subject vessel was so insured. Plaintiff did not object when defendant later sold the vessel to a third party. Plaintiff’s case as regards ownership consists of his own testimony and other witnesses including some of his relatives, who testified they dealt with plaintiff as owner of the vessel. Testimony that he held himself out to others as owner of the boat is not conclusive.
The testimony generally is quite confusing. It is apparent that the court and counsel had some difficulty in confining some witnesses, particularly the parties to the suit to direct, concise answers to simple questions. It is a well settled legal principle that the trial judge’s findings on questions of fact and particularly on questions involving credibility of witnesses, who testified before the trial judge, are entitled to great weight on appeal and will not be disturbed unless clearly erroneous. Orlando v. Polito, 228 La. 846, 84 So.2d 433; Richard v. Barker, La.App., 124 So.2d 399; Pickett v. Norwich Union Fire Insurance Society, La.App., 119 So.2d 566.
The second element of this case is plaintiff’s alternative demand for certain sums allegedly due him arising from his operation of the subject motor vessel. Three transactions are to be considered: (1) The 25% of plaintiff’s shrimp catch that defendants were to receive and credit against the money they advanced for the construction of the boat; (2) the balance due defendants for expenses they incurred in connection with plaintiff’s operation of the “Cherie”, and (3) the value of the inventory of plaintiff’s property on' the vessel taken shortly after it was seized by defendants.
The trial judge considered the application of the amounts involved in those three phases to be a matter of accounting and, under the authority of Articles 442 and 443 of the then applicable Code of Practice, appointed a Certified Public Accountant and member of the Bar to review and report on the various transactions between the parties.
Plaintiff filed a rule to homologate the auditor’s report. Defendants, on appeal, contend that the homologation was not le- *315 gaily introduced in that they were not allotted the legal delay in which to prepare an opposition to the report. The trial court held otherwise and we agree with it. The original audit report, furnished to both counsel, is dated December 10, 1957. After hearing evidence the court ordered a supplemental audit and continued the hearing. The supplemental audit was dated July 10 and filed in the record on July 11, 1958. The matter came up again on November 13, 1958, when the supplemental audit was offered in evidence. Both counsel announced that they had no further ■evidence and the case was layed over for argument to be heard on December 9, 1958. The transcript discloses no further action until May 25, 1959, when, on the judge’s order, the artditor dictated his conclusions in evidence (Tr. 251).
In the preparation of the audit there were many conferences with all counsel, sometimes separately and sometimes with all counsel present. Actually, there was no formal ruling or judgment on the rule to homologate, but the supplemental report was admitted and on the court’s order without objection the auditor dictated in evidence a resume of his findings. The trial court reserved defendants’ right to oppose the audit report after it was introduced. Counsel for defendants cross-examined witnesses, but never made any further opposition under the reservation. We think the auditor’s report was properly considered.
Utilizing the audit report of the court appointed accountant, the trial court gave written reasons for its judgment, in which we fully concur, as follows:
“Plaintiff herein sues to be declared the owner of a certain motor vessel, “Cherie”, together with damages for its illegal seizure by the defendants, or, in the alternative, in the event defendants are declared to be the owners of the vessel, then then for damages for an amount in the sum of $24,824.46.
“On plaintiff’s primary cause of action the Court must hold from the evidence that the defendants are the registered and valid owners of the vessel; but, on the alternative plea, the court finds that plaintiff is entitled to $8,412.-67 under the 25% retainage arrangement, less the balance due on open account to defendants, as shown by the supplemental audit made by the Certified Public Accountant, appointed by the Court, in the amount of $4,856.92, leaving a net balance due plaintiff by defendants in the amount of $3,555.75, plus the equipment on the vessel as per inventory made on December 14, 1954, in the amount of $3,507.88; leaving a net amount due plaintiff of $7,063.63. There has been no concrete evidence of the depreciated value of the equipment, so that the valuation made by the Sheriff’s Office after seizure must stand as being unchallenged.
“With reference to the additional items of cost, the auditor made no such allowance because they were not proved. The audit was made by Mr. Joseph V. DiRosa, a member of the bar and certified public accountant, who made both an original and supplemental audit; and on the basis of his audit and report, and the conclusions of fact by me that the boat is in the registered name of defendants, or either of them, and they are the lawful owner, there will be judgment in favor of Sylvestre Ybarzabal and against defendants, in the full sum of $7,063.63, with legal interest from January 10, 1955 until paid.”
There is a dispute as to what value, if any, should be placed on the items listed on the inventory of equipment on the vessel, which the trial court held was paid for by plaintiff. The inventory is in the record, each item is listed along with unit prices, totalling $3,507.88. The sole controverting evidence offered by defendants is the general statement that all the inventoried equipment was worth $700.00. The detailed listing with unit prices, verified by plaintiff as being the prices shown *316 by the invoices, must be accepted as the accurate figure in the absence of any proof to the contrary. Moreover, the boat belonged to defendants. These items of equipment when installed on the boat by plaintiff then belonged to defendants. Plaintiff is entitled to be reimbursed the cost price which he paid.
As plaintiff did not answer the appeal, his demand for damages for illegal seizure of the motor vessel and damages resulting therefrom will not be reviewed. Code of Practice Articles 592, 890.
In view of the foregoing, the judgment of the District Court will be affirmed, defendants to pay all costs.
Affirmed.